IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ARLANDER HAMPTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 06-477-DRH** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District

Judge David R. Herndon pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

In accordance with **42 U.S.C. § 405(g)**, plaintiff Arlander Hampton seeks judicial review

of the final agency decision finding that he is not disabled and denying him Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[2]

## Procedural History

Plaintiff filed an application for DIB and SSI on April 26, 2002, alleging disability

beginning on October 15, 2000.  (Tr. 95).

The application was denied initially and on reconsideration.  Plaintiff requested a

hearing.  The first hearing was adjourned to allow plaintiff to obtain representation.  (Tr. 21).  A

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.  He is substituted as defendant herein pursuant to Fed.R.Civ.25(d).

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

hearing was held before Administrative Law Judge (ALJ) Michael J. Haubner December 9, 2004. (Tr. 33 - 56). Plaintiff was represented by the same attorney as is representing him in this court. ALJ Haubner denied the application for benefits in a decision dated November 4, 2005. (Tr. 15-18). Plaintiff's request for review was denied by the Appeals Council, and the November 4, 2005, decision became the final agency decision. (Tr. 7).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Mr. Hampton raises the following issues:

1.      Whether the ALJ fully developed the record; and

2.      Whether the ALJ properly formulated plaintiff's residual functional capacity.

### The Evidentiary Record

The court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record, focusing on the evidence most relevant to the issues raised by plaintiff.

Plaintiff claims that he is disabled as a result of blindness in his left eye, diminished vision in his right eye, and a history of hepatitis C. (Tr. 106).

**1.      Past Relevant Work**

Plaintiff was worked in the past as a teachers aide and a substitute teacher. He was employed by East St. Louis School District 189 and by the St. Louis Board of Education. He also worked for a short time in 1997 as a scanner for UPS. (Tr. 98-104).

**2.      Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Jennifer Rodgers. (Tr. 35).

Arlander Hampton was born on December 3, 1949. He claims that he became unable to

work on October 15, 2000.  (Tr. 42).  He is a college graduate.  (Tr. 41).  He stopped driving

about 4 years ago.  (Tr. 43).

Plaintiff testified that he was working as a teacher in 1999 when he realized that he

"could not see."  (Tr. 43).  He cannot see out of his left eye at all.  (Tr. 45).  He is able to take

care of his personal needs, but cannot run a microwave or other home appliances due to poor

vision.  He can see well enough to make out large objects; for instance, he was able to

distinguish a box of tissues from a microphone on the table at the hearing.  (Tr. 44).

Plaintiff estimated that he can lift five pounds, and then testified that he was able to lift a

bag containing a gallon of milk and a quart bottle of oil.  (Tr. 45).  He can stand for only about

15 minutes because he gets pain in his side.  He then has to lay down for an hour.  (Tr. 46).  He

is positive for Hepatitis C.  (Tr. 46).  He used drugs and alcohol in the past, but quit when he got

Hepatitis.  He then testified that he drinks occasionally now.  (Tr. 47).  He testified that he is not

HIV positive.  (Tr. 47).

Plaintiff was diagnosed with Hepatitis C in 1975.  A couple of years before the hearing,

he began having pain in his side again.  He went to the doctor, and was told that his Hepatitis had

become activated again.  He continues to have pain in his right side.  (Tr. 48-49).  The pain is

"all the time," but is less if he leans back or lays down.  (Tr. 50).  He described it as a burning

sensation.  (Tr. 51).

According to plaintiff, he does "nothing" all day.  He lays down, and watches television

for about 4 hours a day.  He washes dishes and sometimes sweeps.  He does not go shopping.

(Tr. 51-54).

Mr. Hampton had surgery for a cyst on his shoulder the year before the hearing.  (Tr. 50).

**3.**     **ALJ's Development of Record**

The ALJ stated on the record that he had requested that a vocational expert attend the

hearing, but that one was not available.  He stated that he "was probably going to address some interrogatories" to a vocational expert.  (Tr. 54).  However, he issued his opinion without any evidence from a VE.  (Tr. 15-18).

Plaintiff's attorney requested a consultative exam to evaluate plaintiff's hepatitis.  (Tr. 54).  At the close of the hearing, the ALJ said "I don't have enough evidence to decide the case. So once I get the additional evidence, or if I don't get any evidence from anyone, then we'll look at everything again, and I'll decide the case at that point."  (Tr. 55).

The ALJ requested, but never received, consultative examinations.  This may be because the requests were sent to the St. Louis, Missouri, office, but plaintiff lives in East St. Louis, Illinois.  On December 20, 2004, the ALJ sent a request to the St. Louis Office of Disability Determination Services for a consultative internal medicine examination and completion of a medical source statement of ability to do work-related activities.  (Tr. 150).   The ALJ again requested an internal medicine exam, along with psychological testing and completion of a medical source statement, on May 10, 2005.  (Tr. 144).  A handwritten note indicates that an SSA staff member called the St. Louis office on October 24, 2005, to follow up on the request, and was told that the office had not received either request.  (Tr. 143).  The ALJ's decision was issued shortly thereafter, on November 4, 2005.  In the opinion, the ALJ noted that the consultative exams were never done and "Therefore I have decided this case on the existing evidence, even though I would have preferred confirmation from an updated consultative examination report (and I had planned to do a supplemental hearing with a vocational expert once that report was received)."  (Tr. 15).

**4.**      **Medical Records**

The medical records are brief.

The only treatment records are from Southern Illinois Healthcare Foundation, where

plaintiff was seen for complaints related to his Hepatitis in 2001 and 2002.  (Tr. 161-166).  He was seen in February and March of 2002, complaining of right sided pain for the last six months and frequent urination.  The notes indicate that he was using alcohol daily and had a history of intravenous drug use, which was continuing.  Rehab was discussed.  He had no insurance, and was given a referral to contact "social services."  (165-166).

Plaintiff's eyes were examined by Dr. Edward Szewczyk at the request of the Illinois Department of Human Services on May 31, 2002.  (Tr. 156-159).  He had suffered an injury to his left eye due in 1960.  The left eye had only light perception and projection.  The vision in the right eye was 20/30, corrected, with a full field of vision.  (Tr. 156).

Gregory Rudolph, PhD, did a mental status evaluation on September 12, 2002.  He concluded that plaintiff had some depression, but his mental status and functioning were essentially normal.  (Tr. 175-178).

**5.**     **State agency physicians assessments**

A state agency physician completed a physical residual functional capacity assessment on June 12, 2002.  He concluded that plaintiff was able to lift 10 pounds frequently and 20 pounds occasionally, could stand/walk for 6 out of 8 hours, and sit for 6 out of 8 hours.  He had no postural or manipulative limitations.  He had visual limitations of blindness in left eye.  (Tr. 167-174).

The assessment states that plaintiff was diagnosed as HIV positive in 1991.  (Tr. 169).  The source of this information is unclear.  Plaintiff testified at the hearing that he is not HIV positive.

**6.**     **Disability Report**

This form was completed using information provided by plaintiff.  The form states that plaintiff "can't see anything with left eye, and can't see words with my right eye."  (Tr. 106).

The form also states that he stopped working as a teacher because "can't read because of sight." (Tr. 106). Mr. Hampton graduated from Harris Stowe Teachers College in 1990. (Tr. 112).

**7.   ALJ's Decision**

The ALJ concluded that Mr. Hampton retains the functional capacity to perform light work not requiring fine binocular vision or food handling. He found that plaintiff is not disabled because he is capable of performing his past work of substitute teacher and teacher's aide. He also found that, using the "grid," plaintiff has the ability to perform a broad range of unskilled light work, and that he is therefore not disabled. (Tr. 15-18).

## Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir.**

1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, the Court must determine not whether plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it. *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

## <u>Analysis</u>

Taking the record as a whole, this court concludes that plaintiff is correct: the ALJ failed to develop the record, and remand is required.

Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Development of a full and fair record is a "basic obligation of the ALJ." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). Failure to do so is good cause for remand for additional proceedings. *Smith*, 231 F.3d at 437. While the ALJ is not required to function as an advocate for the claimant, proceedings before the ALJ are not to be conducted in an adversarial nature. *Sullivan v. Hudson*, 490 U.S. 877, 891 (1989); *Centrex v. Shalala*, 998 F.2d 455, 456 (7th Cir.1993).

Here, the ALJ recognized at the hearing that the record was incomplete. At the hearing, he said, "I don't have enough evidence to decide the case. So once I get the additional evidence, or if I don't get any evidence from anyone, then we'll look at everything again, and I'll decide the case at that point." (Tr. 55).

There is no explanation in the record why the two requests for consultative examinations were not honored. Perhaps it was because Mr. Hampton lives in Illinois, but the requests were sent to an office of Disability Determination Services in Missouri. However, it is clear that the ALJ believed that he needed consultative examinations. He stated in his decision that he "would have preferred confirmation" from a consultative examination report and that he had intended to do a supplemental hearing with a vocational expert after receiving same. (Tr. 15). It appears that he simply gave up after the second request was ignored.

In response, defendant relies on the Seventh Circuit's pronouncement that the ALJ is not required to compile a "complete" record, since "Taking 'complete record' literally would be a formula for paralysis." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). See also, *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).

This court agrees with defendant's argument as a general proposition. Also, it is true, as defendant argues, that the claimant bears the burden of presenting medical evidence to prove

-8-

disability.  See 20 C.F.R. § 404.1512(c).  However, this case presents a unique situation.  This is not a situation where a third party medical source has been unresponsive to requests for copies of medical records.  Here, the ALJ believed that the record was insufficient to decide the case, but his requests for consultative examinations were lost or ignored.  The ALJ told plaintiff at the hearing that he did not have enough evidence to decide the case.  (Tr. 55).  The court cannot now accept the Secretary's position that the record should be deemed to be sufficient because bureaucratic stumbling caused the ALJ's requests for an examination to go unanswered.

In addition, the ALJ's conclusions about plaintiff's residual functional capacity are not supported by substantial evidence.  The ALJ did not sufficiently articulate the reasons for his finding that plaintiff has the ability to do his former work as a teacher.  The ALJ must ""build an accurate and logical bridge from the evidence to her conclusion."  *Dixon v. Massanari*, **270 F.3d 1171, 1176 (7th Cir.2001)**.  The record contains several statements by plaintiff that he is unable to read due to his poor vision.  (Tr. 43-45, 106, 131).  The ALJ made a blanket statement that plaintiff was not "entirely credible," but he made no specific finding about the credibility of his claim that he cannot see well enough to read.  The ALJ noted that plaintiff  could not do work that requires "fine binocular vision," but also found that plaintiff has the ability to perform work as a teacher's aide and a substitute teacher.  The ALJ did not explain whether he did not believe plaintiff's statement about being unable to read, or whether he concluded that plaintiff could work as a teacher's aide or a substitute teacher even if he is unable to see and to read.

The record was not developed at all as to the nature of Mr. Hampton's teaching jobs, except that he was a teacher's aide in the East St. Louis public school system, and was a substitute teacher in the City of St. Louis public school system.  The ALJ's decision does not mention the visual requirements of this kind of work.  According to the <u>Dictionary of Occupational Titles</u>, the job of elementary school teacher requires "near acuity frequently" and

"field of vision occasionally."  DICOT §092.227-010.  The job of teacher's aide requires "near acuity frequently."  DICOT §249.367-074.  This is not to suggest that a person with limited eyesight could never function as a teacher or teacher's aide, but it does illustrate that the ALJ did not sufficiently articulate the basis for his finding that Mr. Hampton is able to perform his past work.  "[A]n administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws [internal citations omitted] even if those flaws might be dissipated by a fuller and more exact engagement with the facts."  *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

Lastly, as was noted above, the ALJ requested that a vocational expert appear at the hearing, but that request was refused because a VE was not available.  In the absence of any evidence from a VE, the ALJ used the Medical-Vocational Guidelines (the "grid") to make an alternative finding that plaintiff is not disabled.  (Tr. 18).  The ALJ found that plaintiff has limitations on ability to do light work in that he cannot do food handling or work requiring binocular vision, but he concluded that these non-exertional limitations "do not significantly reduce the world of work."  The ALJ cited to SSR 85-15 for this point.  (Tr. 18).

SSR 85-15 states "As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels."  SSR 85-15, *8.  Plaintiff testified that he bumps into objects on his left (blind) side.  (Tr. 45).  Again, the ALJ did not specify whether he found this testimony to be credible; the ALJ made no finding as to whether plaintiff has the visual fields to avoid ordinary hazards in the workplace.  Also, SSR 85-15 does not cover the situation where a claimant has both visual impairments and a restriction

on food handling.  The ALJ's finding, based on the grid,  that plaintiff has the RFC to do a broad

range of unskilled light work is not supported by substantial evidence.  The Seventh Circuit has

"clearly stated that where a nonexertional limitation might substantially reduce a range of work

an individual can perform, the use of the grids would be inappropriate and the ALJ must consult

a vocational expert." *Zurawski v. Halter*, **245 F.3d 881, 889 (7ᵗʰ Cir. 2001);**

This court is not expressing any opinion as to whether Mr. Hampton is disabled or is

entitled to receive DIB or SSI.  The ALJ may have reached the correct ultimate conclusion, but

the conclusion is not supported by sufficient evidence in the record, and the case should

therefore be remanded for further proceedings.

The Seventh Circuit has explained remand in a Social Security case as follows:

> Two sentences of 42 U.S.C. § 405(g) authorize remand in different situations. Sentence
> four authorizes the district court to enter "a judgment affirming, modifying, or reversing
> the decision of the Commissioner of Social Security, with or without remanding the
> cause for a rehearing." Sentence six allows the court to remand for the receipt of new
> evidence, but without entering a judgment determining the propriety of the decision
> previously rendered. Sullivan v. Finkelstein, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d
> 563 (1990), holds that a sentence-four remand, which depends on a finding of error in the
> Commissioner's decision, is appealable under § 1291 as a final decision, while a
> sentence-six remand is not final or appealable because no adjudication has taken place.
> See also Forney v. Apfel, 524 U.S. 266, 118 S.Ct. 1984, 141 L.Ed.2d 269 (1998). A
> sentence-four remand concludes the litigation in the district court; any protest about the
> Commissioner's decision on remand requires a new suit. But a sentence-six remand
> works like a yo-yo; once the record has been enlarged, the district court finally decides
> whether the administrative decision is tenable.

*Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, **195 F.3d 975,
978 (7ᵗʰ Cir. 1999).**

Because the ALJ erred in his decision, remand should be pursuant to sentence four of

42 U.S.C. § 405(g).

## Recommendation

For the aforesaid reasons, this court recommends that the Commissioner's final decision

be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of

the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this report and recommendation must be filed on or before July 23, 2007.

**Submitted: July 3, 2007.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**